FILED
2014 Jul-21  AM 10:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **MARY E. PERDUE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **1:12-cv-2864-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Mary E. Perdue ("Perdue") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

Perdue, whose past relevant experience includes work as a garment inspector and trash packer, filed an application for Title XVI Supplemental Security Income on October 14, 2009, alleging a disability onset date of January 1, 2005, due to asthma, back problems, and nerve problems.  (R. 15, 158).  After the SSA denied Perdue's claim, she

requested a hearing before an ALJ.  (R. 125-26).  The ALJ subsequently denied Perdue's claim, (R. 12-26), which became the final decision of the Commissioner when the Appeals Council refused to grant review.  (R. 1-6).  Perdue then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges

that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

(4)  whether the claimant is unable to perform his or her past work; and

(5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to

a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that Perdue had not engaged in substantial gainful activity since October 14, 2009, and, therefore, met Step One. (R. 17). Next, the ALJ found that Perdue satisfied Step Two because she suffered from the severe impairments of "low back pain due to osteoarthritis, asthma, depression, and glaucoma." *Id*. The ALJ then proceeded to the next step and found that Perdue failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 20). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Perdue has the residual functional capacity (RFC) to perform

> light work as defined in 20 CFR 416.967(b) except the claimant is limited to occasional stooping, bending, crouching, or crawling.  The claimant cannot perform frequent overhead reaching/lifting with the left upper extremity.  The claimant is to avoid concentrated exposure to extreme cold, extreme heat, wetness, fumes, odors, gases, and pulmonary irritants.  She cannot work around unprotected heights.  She is limited to jobs that require 20/30 visual acuity bilaterally and simple 1-2-3 step work procedures.  Contact with the public and co-workers should be brief.

(R. 22). In light of her RFC, the ALJ held that Perdue "is unable to perform any past relevant work." (R. 24). Lastly, in Step Five, the ALJ considered Perdue's age,

education, work experience,[1] and RFC and determined "there are jobs that exist in significant numbers in the national economy [Perdue] can perform." (R. 25). Therefore, the ALJ found that Perdue "has not been under a disability, as defined in the Social Security Act, since October 14, 2009, the date the application was filed." (R. 26).

## V. Analysis

The court now turns to Perdue's contentions that the ALJ failed to (1) properly evaluate the report from the consultative mental examiner, and (2) incorporate all of Perdue's established limitations in the hypothetical question posed to the vocational expert (VE). *See* doc. 8 at 4-13. The court addresses each contention in turn.

### A.   The ALJ properly evaluated the report from the consultative examiner.

Perdue contends the ALJ had no valid reason for rejecting the report of the consultative examiner, Dr. Robert Storjohann, Ph.D. Doc. 8 at 11. Dr. Storjohann examined Perdue on February 11, 2010, at the request of the SSA, and diagnosed Perdue as having "Major depression, recurrent, severe," and "Generalized anxiety disorder." (R. 331). Dr. Storjohann gave Perdue a GAF score of 45,[2] and found that "[s]he appears to have marked deficits in her ability to respond appropriately to supervision, coworkers,

---

[1] As of the date of the ALJ's decision, Perdue was 47 years old, had a marginal education, and past relevant work that included light semi-skilled work as a garment inspector, and light unskilled work as a trash packer. (R. 25).

[2] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., Text Revision). A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." *Id.* at 34 (emphasis in original).

and work pressures in a work setting." *Id.*  Perdue contends the ALJ erred in rejecting these findings.

As a non-treating physician, Dr. Storjohann's opinion was not entitled to controlling weight under 20 C.F.R. § 404.1527(c)(2).  Consequently, the ALJ had to consider several factors to determine the weight, if any, to give Dr. Storjohann's opinions.  These factors include whether Dr. Storjohann presented medical evidence and explanation supporting his opinion, and whether his opinion is consistent with the record as a whole.  *See* 20 C.F.R. § 416.927(c).  However, the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).  Indeed, even a treating physician's opinions, which are entitled to more deference than those of Dr. Storjohann, may be rejected if the ALJ has "good cause." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The ALJ considered these factors and ultimately gave "[v]ery limited weight" to Dr. Storjohann's opinions. (R. 24).  In reaching this decision, the ALJ provided multiple reasons that are supported by the substantial evidence and constituted good cause for rejecting Dr. Storjohann's opinions.  First, the ALJ found that Dr. Storjohann's "conclusory report seems to indicate heavy reliance on [Perdue's] subjective report of her mental symptoms and limitations rather than the objective findings of the evidentiary record." (R. 24).  Under the law, "good cause" exists to reject an opinion if it is conclusory, *see Lewis,* 125 F.3d at 1440, or was based mainly on the claimant's subjective complaints, *see Pettaway v. Astrue*, 376 F. App'x 889, 891 (11th Cir. 2010).

Second, the ALJ found that "[t]he medical evidence of record simply does not substantiate the reliability or credibility of the severity of [Perdue's] subjective complaints," and that "Dr. Storjohann provided very little explanation of the evidence relied on in forming his diagnoses of [Perdue] and his assessment that she had moderate to marked impairments resulting from her mental limitations." (R. 24). This finding is consistent with the relevant regulation that provides that the weight given an opinion depends on the degree of supporting explanation and its consistency with the record as a whole. *See* 20 C.F.R. § 416.927(c)(3)-(4). Third, the ALJ found that Dr. Storjohann's evaluation "included numerous conflicting assessments of [Perdue's] mental state in regards to her limitations," and gave an extended explanation to support this finding:

> Dr. Storjohann opined [Perdue] appeared to have moderate deficits in her ability to understand, carry out, and remember instructions in a work setting and marked deficits in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. However, he also reported in the same evaluation, that [Perdue] was oriented to person, place, situation, and time, she was able to perform simple mathematical calculations, and most significantly, that she was able to make acceptable work decisions. He further opined her recent and remote memory was grossly intact, her thoughts and speech were logical, coherent, and goal-directed and that there were no loose associations, confusion, hallucinations or delusions observed.

(R. 24). The ALJ specifically observed that Dr. Storjohann's finding of a "marked" deficit in the ability to respond appropriately to supervision, coworkers, and work pressures was contradicted by Dr. Storjohann's own findings, which "indicated that [Perdue's] judgement and insight were grossly intact," and that she "was able to make acceptable work decisions and manage her own financial affairs." (R. 23.) For these reasons, because "good cause" exists to reject a medical opinion when the opinion is

inconsistent with the physician's own medical records, *see Lewis*, 125 F.3d at 1440, the ALJ correctly found that Dr. Storjohann's "conflicting inconsistent statement in regards to [Perdue's] symptoms and behavior renders his overall opinion less persuasive." (R. 24). Finally, the ALJ found that Dr. Storjohann's "description of [Perdue's] marked symptoms is simply not documented by medical findings in this case." (R. 24). In fact, the medical evidence shows that after beginning treatment for her mental impairments, Perdue's condition improved. (R. 388-92). For example, the treatment notes from Cheaha Mental Health Center show Perdue reported that her "antidepressant [was] working" on October 12, 2010, and that her "depression [was] improved" on January 4, 2011. (R. 389-90). Dr. Storjohann's opinions do not reflect the impact of this treatment on Perdue's symptoms because Perdue was not receiving treatment or taking medications for her mental impairments when Dr. Storjohann examined her. (R. 329). "[T]he extent to which [the physician] is familiar with other information in [the] case record [is a] relevant factor[] . . . in deciding the weight to give a medical opinion." 20 C.F.R. § 416.927(c)(6). Where, as here, the record establishes that Dr. Storjohann lacked the requisite familiarity with Perdue's treatment history, the court finds no error in the ALJ's decision to give Dr. Storjohann's opinion limited weight.

In a nutshell, the ALJ considered the factors set forth in the regulations and, consistent with the law of this circuit, articulated "good cause" for giving Dr. Storjohann's opinions limited weight. Based on the court's review of the record, substantial evidence supports the ALJ's finding and there is no reversible error.

    B.    <u>The ALJ did not fail to incorporate all of Perdue's established limitations in</u>

<u>the hypothetical question posed to the VE.</u>

Perdue's final contention of error is based on the ALJ's failure to include either the vocational restrictions indicated by Dr. Storjohann, or those indicated by Dr. Eugene Fleece, Ph.D., the State agency reviewing psychologist, in his hypothetical question to the VE.  Doc. 8 at 12-13.  Unfortunately, Perdue overlooks that the regulations provide that "[a]lthough [the ALJ] consider[s] opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the [ALJ]."  20 C.F.R. § 416.927(d)(2).  Consequently, the Eleventh Circuit has recognized that "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (unpublished).  Moreover, an ALJ's RFC finding can be supported by substantial evidence even without a medical source statement in the record.  *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 922-23 (11th Cir. 2007) (unpublished) (rejected the claimant's argument "that without [the physician's] opinion, there [was] nothing in the record" to support the ALJ's RFC assessment).  Therefore, contrary to Perdue's contention, the ALJ had no obligation to chose between the restrictions found by Dr. Storjohann and those indicated by Dr. Fleece.  Ultimately, the ALJ properly considered Dr. Fleece's opinion, along with the rest of the evidence, to determine Perdue's mental RFC.  Because the hypothetical question posed to the VE incorporated all of the restrictions found by the ALJ, it provides substantial evidence to support his finding that Perdue could perform other work.  *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial

evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); *see also Deters v. Comm'r of Soc. Sec.*, 301 F. App'x 886, 888 (11th Cir. 2008) (unpublished) (ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported") (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)). Accordingly, the ALJ committed no reversible error.

### VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Perdue is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done this 21st day of July, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE